UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PAUL W. ELLIS,                          )
                                        )
            Plaintiff,                  )
                                        )
                                        )
v.                                      )      No. 3:15-CV-186-HBG
                                        )
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

**MEMORANDUM OPINON**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 20]. Now before the Court

is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17]

and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19].

Paul W. Ellis ("the Plaintiff") seeks judicial review of the decision of the Administrative Law

Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner

of Social Security ("the Commissioner").

On November 7, 2011, the Plaintiff filed an application for disability insurance benefits

("DIB") and supplemental security income ("SSI"), claiming a period of disability which began

January 13, 2011. [Tr. 210, 212]. After his application was denied initially and upon

reconsideration, the Plaintiff requested a hearing. [Tr. 98]. On August 21, 2013, a hearing was

held before an ALJ to review determination of Plaintiff's claim. [Tr. 28-59]. On October 21,

2013, the ALJ found that the Plaintiff was not disabled. [Tr. 8-27]. The Appeals Council denied

the Plaintiff's request for review [Tr. 1-6]; thus, the decision of the ALJ became the final

decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 29, 2015, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2.  The claimant has not engaged in substantial gainful activity since January 13, 2011, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3.  The claimant has the following severe impairments: degenerative disc disease of the cervical spine; status post cervical fracture; left shoulder tendonitis; left knee tendonitis; degenerative joint disease (right shoulder); obesity; opioid dependence; major depressive disorder; and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P., Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently. With normal breaks in an 8-hour day, he can sit for 6 hours and stand and/or walk for 6 hours; can frequently reach in all directions, including overhead with his left upper extremity; can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally balance,

2

stoop, kneel, crouch and crawl. The claimant can remember and carry out low-level detailed instructions; can maintain concentration, persistence and pace for low-level detailed tasks over a normal workday with appropriate breaks; can relate appropriately to supervisors, peers, and the public; and can adapt to routine changes in the workplace.

6. The claimant is unable to perform any past relevant work (20 CFR 40431565 and 416.965).

7. The claimant was born on September 20, 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 13, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-22].


II.     DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for

DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an

application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an

3

individual must file an application and be an "eligible individual" as defined in the Act. 42

U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of

financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A

claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505(a), 4015.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not
> disabled.
>
> 2. If claimant is not doing substantial gainful activity, his
> impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is
> suffering from a severe impairment that has lasted or is expected to
> last for a continuous period of at least twelve months, and his
> impairment meets or equals a listed impairment, claimant is
> presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his
> past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his

4

> past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

5

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.    POSITIONS OF THE PARTIES

The Plaintiff raises two allegations of error on appeal. First, the Plaintiff contends that the ALJ erred by assigning "little weight" to the opinion of Clary Foote, M.D., and "great weight" to the non-examining state agency physician. [Doc. 17 at 13-18]. The Plaintiff argues that Dr. Foote was a treating physician and as such, his opinion should have been weighed in

6

accordance with the treating physician rule. [Id. at 15-16]. Moreover, because Dr. Foote is alleged to be a treating physician, the Plaintiff argues that the opinion of the non-examining state agency physician can never serve as substantial evidence to support the ALJ's finding. [Id. at 16-17]. Second, the Plaintiff contends that the ALJ erroneously relied on vocational expert ("VE") testimony at step five of the sequential evaluation, arguing that the testimony was unclear whether the jobs identified by the VE were consistent with the Dictionary of Occupational Titles ("DOT") since the VE did not identify specific job code numbers within the DOT. [Id. at 18-20].

The Commissioner responds that the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence because the ALJ properly evaluated the medical opinions of record. [Doc. 19 at 4-13]. With regard to Dr. Foote, the Commissioner submits that the doctor was not a treating physician, a fact properly recognized by the ALJ, and therefore his opinion was not due any significant level of deference. [Id. at 8]. Additionally, the Commissioner argues that the ALJ gave a reasoned explanation for rejecting the opinion in lieu of opinions rendered by a consultative examiner and the non-examining state agency physician. [Id. at 9-12]. Finally, the Commissioner maintains that the VE's testimony did not conflict with the DOT, and therefore, the ALJ properly relied on the testimony in determining that other jobs existed within the national economy that the Plaintiff was capable of performing. [Id. at 13-15]. The Commissioner explains that case law neither requires a VE to identify specific job code numbers in the DOT, nor must the jobs identified by a VE line up perfectly with a DOT's descriptions. [Id. at 14-15].


V.     ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

## A.    Medical Opinion Evidence

In determining whether the ALJ accorded the proper level of deference to Dr. Foote's opinion, the Court must determine as a threshold matter whether Dr. Foote was a treating physician within the meaning of 20 C.F.R. §§ 404.1502 and 416.902.

Under the Social Security Act and its implementing regulations, "acceptable medical sources," which include licensed physicians such as Dr. Foote,  see §§ 404.1513, 416.913, are subject to different levels of scrutiny depending on whether the source is a non-examining source, a non-treating, examining source, or a treating source.  §§ 404.1527, 416.927.   A "treating source" is one "who has, or has had, an ongoing treatment relationship" with the claimant.  §§ 404.1502, 416.902.  An "ongoing treatment relationship" occurs when a claimant is, or has, seen the medical source with a "frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." Id.  If, however, a claimant is seen by an "acceptable medical source" only to obtain a report in support of a claim for disability, rather than a need for treatment or evaluation, the source will be considered a non-treating source.  Id.

While an ALJ is required to "evaluate every medical opinion [he] receive[s]," §§ 404.1527(c), 416.927(c), all medical opinions are not treated equally, Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007). Only a treating source's opinion is subject to the scrutiny of the treating physician rule outlined in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). That is, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. Id. When the opinion does not garner controlling weight, the appropriate weight to be

given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is charged with always giving "good reasons" for the weight assigned to a treating physician's opinion. Id.

In this case, the Plaintiff established care with Dr. Foote's clinic on February 19, 2013, for neck and low back pain with left shoulder pain. [Tr. 515]. The Plaintiff received pain management treatment from Dr. Foote's clinic on five separate occasions beginning in February 2013 and through June 2013. [Tr. 515-33]. During each appointment, the Plaintiff was seen by Terry South, NP-C. [Id.]. While Nurse Practitioner South personally examined the Plaintiff each time and signed the treatment notes from each visit [id.], three of the treatment notes were also "co-signed" by Dr. Foote some two weeks to two months after the examinations had taken place[1] [Tr. 515, 521, 524].

Following the last appointment of record, Dr. Foote completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" on June 25, 2013, wherein Dr. Foote responded to a number of short-answer and multiple choice questions regarding the Plaintiff's functional limitations. [Tr. 532-27]. Therein, Dr. Foote opined that the Plaintiff could lift, carry, push or pull less than 10 pounds, sit and stand less than three hours in an eight-hour workday, could occasionally balance but could never perform any other postural activities, and was limited in his ability to reach, handle, feel, push or pull, and work with heights or moving machinery.

---

[1] The Court notes that Dr. Foote did not actually sign these records. Rather, his name is simply typed at the top of the records and misspelled at that.

[Tr. 534-36]. Dr. Foote's opinion was based upon the Plaintiff sustaining a cervical fracture at C2 and C3 in 2006, for which he was treated with a halo that was removed in January 2007, as well as complaints of back pain and upper extremity weakness. [Tr. 534-37].

In the disability determination, the ALJ assigned "little weight" to Dr. Foote's opinion for three reasons. [Tr. 19-20]. First, the ALJ noted that Dr. Foote never personally examined the Plaintiff. [Tr. 20]. The ALJ observed that Dr. Foote had merely "signed off" on several of the treatment notes and because his signature did not appear on all of the remaining treatment notes, there was no indication that he was familiar with the Plaintiff's complete care. [Id.]. Second, the ALJ noted that during the Plaintiff's course of treatment with Nurse Practitioner South, the Plaintiff was also seen by Mountain People's Health Councils ("MPHC") on eight separate occasions, specifically between June 21, 2012 and January 11, 2013, and that except for one visit when the Plaintiff reported having lifted his crippled brother, the Plaintiff consistently reported that his back pain was well controlled by medication. [Id.]. Finally, the ALJ remarked that Dr. Foote's opinion was inconsistent with other medical evidence of record, including the opinions of consultative examiner Robert L. Whittaker, M.D., and non-examining state agency physician Reeta Misra, M.D. [Id.].

Without explanation, the Plaintiff characterizes Dr. Foote as a treating physician. The Commissioner contends, however, that Dr. Foote was not a treating source and relies on Engebrecht v. Comm'r of Soc. Sec., 572 F. App'x 392 (6th Cir. 2014) for the proposition that merely co-signing several of the treatment notes is insufficient to establish otherwise. In Engebrecht, the plaintiff argued that a psychologist, who had co-signed two letters with the plaintiff's treating therapist, was a treating source. Id. at 398. The court of appeals observed that other than the two letters bearing the psychologist's signature, there was no evidence that the

10

psychologist conducted any of the therapy sessions, made treatment recommendations, authored independent treatment notes, reviewed the claimant's file, or was even previously reported by the claimant as a treatment provider. Id. at 398. The evidence, on the other hand, established that the therapist, an "other source,"[2] had conducted all of the foregoing regularly. Id. The court of appeals concluded that not only had the plaintiff, and the record, failed to established that the psychologist was a treating source, but the court also found that the psychologist was not "any kind of medical source as defined by the relevant SSA regulations." Id. at 399.

In the present matter, the Court finds that Dr. Foote is not a treating source. While the Plaintiff testified that Dr. Foote had "done some little tests" in regard to the Plaintiff's hand grip [Tr. 48-49], the record, like Engebrecht, is void of any indication that Dr. Foote conducted examinations, was present for any of the appointments, made treatment recommendations, authored independent treatment notes, or reviewed the entirety of the Plaintiff's treating history with the clinic before completing the medical assessment. The Court declines to find the action of "co-signing" several of the treatment notes an indication that Dr. Foote had an "ongoing treatment relationship" with the Plaintiff. See Smith v. Comm'r of Soc. Sec., No. 1:13-CV-663, 2015 WL 350575, at *12 (S.D. Ohio Jan. 26, 2015) ("[B]ecause there is evidence that Dr. Skale treated plaintiff only once before she co-signed nurse practitioner Fulton's assessment, Dr. Skale is not a treating doctor for disability purposes.") (citing Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007)); Dick v. Comm'r of Soc. Sec., No. 4:13 CV 524, 2014 WL 1270594, at *6 (N.D. Ohio Mar. 26, 2014) (declining to qualify a doctor as a treating physician when the

---

[2] In addition to evidence provided by "acceptable medical sources," the regulations instruct that evidence will also be considered from "others sources," which include non-acceptable medical sources such as physicians' assistants, nurse practitioners, and therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d). "'Other sources' cannot establish the existence of a medically determinable impairment," but they "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007) (quoting Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006)).

doctor had signed off on two assessments completed by a nurse where there was no evidence that the doctor was preset at any of the examination related to the assessment, had personally treated the claimant, had on ongoing treatment relationship with the claimant, or was otherwise involved in the claimant's care); Rabideau v. Comm'r of Soc. Sec., No. 1:12-CV-108, 2013 WL 5354215, at *1 (W.D. Mich. Sept. 24, 2013) (affirming the ALJ's finding that two assessments authored by a physician's assistant, but "stamped" with the signature of the claimant's treating physician, were the opinions of the physician's assistant and were not entitled to any deference under the treating physician rule).

Moreover, the Court is not persuaded that Dr. Foote was a treating source simply because he completed the medical assessment form rather than Nurse Practitioner South. [see Doc. 17 at 15]. Our appellate court has repeatedly "declined to give significant weight to rudimentary indications that lack an accompanying explanation" such as "check-box" forms that are not accompanied by sufficient explanation. Hernandez, v. Comm'r of Soc. Sec., No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016) (citing Keeton v. Comm'r of Soc. Sec., 583 F. App'x 515, 525 (6th Cir. 2014) ("[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion") (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *1 (July 2, 1996)); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")). Here, while Dr. Foote briefly explained that his opinion was based upon the Plaintiff previously fracturing his cervical spine almost seven years prior and generalized complaints of back pain and upper extremity muscle weakness, the ALJ was not obligated to take this minimal explanation at face value. The ALJ acted appropriately by comparing it with the record as a whole.

12

Accordingly, the Court finds that Dr. Foote was a non-examining source. See 20 C.F.R. §§ 404.1502, 416.902 (defining "non-examining source" as an "acceptable medical source who has not examined you but provides a medical or other opinion in your case."). Consequently, the opinion was not subject to the treating physician rule or its "good reason" requirement. Rather,

> opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. Id. § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013). With this framework in mind, the Court addresses the remaining contentions raised by the Plaintiff.

The Plaintiff argues that the ALJ's reliance on the eight office visits with MPHC between June 21, 2012 and January 11, 2013, see supra p. 10, is misleading and not relevant to the analysis of Dr. Foote's opinion, and further contends that the ALJ ignored earlier treatment notes from MPCH, specifically, records that range from September 12, 2011 through May 21, 2012. [Doc. 17 at 15]. First, the Court finds that the ALJ's reference to the June 2012 through January 2013 treatment notes is indeed relevant to the assessment of Dr. Foote's opinion. The treatment notes demonstrate that the Plaintiff had good results with his medication, which provides a reasonable basis to discount part of Dr. Foote's opinion, as well as the Plaintiff's testimony. Second, the Court notes that the ALJ considered all of the treatment records from MPCH. The ALJ's decision specifically referenced the treatment notes ranging from September 2011 through May 2012, collectively Exhibit 17F [Tr. 425-65], and observed that during said timeframe, the Plaintiff routinely denied joint pain, stiffness, muscle weakness, loss of strength, and muscle

aches.  [Tr. 17].  The ALJ then addressed the remaining treatment notes, collectively Exhibit 21F [Tr. 472-541], which ranged between June 2012 and January 2013, and remarked that these records, with the exception of one office visit where the Plaintiff complained of back pain after having recently lifted his crippled brother, demonstrated that the Plaintiff's medication helped to control his pain.  [Tr. 17, 20].  The Court has examined these records and finds no error in the ALJ's treatment of them, particularly in light of a complete review of the evidence of record.

The Plaintiff further alleges [Doc. 17 at 16-17] that the ALJ erred by assigning "great weight" to the February 19, 2012 opinion of non-examining state agency physician Dr. Misra who opined limitations consistent with the Plaintiff's RFC [see Tr. 400-08] except that the ALJ found that the Plaintiff was additionally limited to frequent reaching with his left upper extremity due to diminished range of motion [Tr. 19].  The Plaintiff submits that Dr. Misra did not have the benefit of reviewing the entire record, specifically treatment received at MPCH after February 2012.  [Id.].  "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," our appellate court "require[s] some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record."  Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted).  Here, the ALJ considered all of the treatment notes from MPCH, including those that post-dated Dr. Misra's opinion [Tr. 17].  Further, the ALJ addressed and gave "significant weight" to the other opinion of record [Tr. 19], namely, that of consultative examiner Dr. Whittaker who likewise opined limitations consistent with the Plaintiff's RFC [see Tr. 395-99].  The ALJ explained that Dr. Misra's opinion was consistent with the treatment notes of record, as well as the opinion of Dr. Whittaker.  [Tr. 19].

14

Therefore, in declining to assign greater weight to Dr. Foote's opinion, the Court finds that the ALJ crafted a decision that was thorough and detailed, discussing the supportability, consistency, and other relevant considerations that detracted from Dr. Foote's opinion, providing sufficient explanation to make clear to subsequent reviewers the reasons for the weight assigned to Dr. Foote's opinion, the other medical opinions of record, and the Plaintiff's RFC as a whole. See 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

Accordingly, the Court finds no merit in the Plaintiff's allegation of error.


### B.    VE Testimony

The Plaintiff contends that the ALJ erred by relying on the VE's testimony at step five of the sequential evaluation to show that other work exists in the national economy that the Plaintiff is capable of performing. [Doc. 17 at 19]. The Plaintiff argues that while the VE identified several jobs that a hypothetical individual with the Plaintiff's RFC could perform, the VE failed to provide the DOT code number that corresponded to each identified job, making it impossible for the ALJ to determine: (1) whether the Plaintiff could perform the jobs enumerated by the VE; and (2) whether the VE's testimony conflicted with the DOT. [Id. at 19-20].

The Commissioner maintains that the ALJ was not required to identify any specific job code number in the DOT, but only identify jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [Doc. 19 at 14]. Citing a string of cases, the Commissioner essentially argues that the ALJ was not obligated to solely rely on the DOT to prove the existence of jobs, and therefore, it is immaterial whether the jobs identified by the VE line up perfectly with a DOT's terms and/or classifications. [Id. at 14-15]. Further, the Commissioner submits that because the ALJ fulfilled his duty, pursuant to Social Security Ruling

15

00-4p, in confirming with the VE that her testimony did not conflict with the DOT, the ALJ was under no further obligation to resolve any alleged conflicts before making it appropriate to rely on the testimony.  [Id. at 15].

During the administrative hearing, in response to a hypothetical question, the VE testified that other work existed in the national economy for an individual with the same age, education, prior work experience, and RFC as the Plaintiff, including a flagman, night watchman, unarmed security guard, case packager, and plumbing hardware assembler.[3]  [Tr. 53].  The VE stated that within the local labor market, there was a combined total of approximately 1,400 of these jobs and about one and a quarter million nationwide.  [Tr. 53-54].  While the VE confirmed that her response was consistent the DOT, she did not state that she relied on the DOT in identifying the foregoing jobs and incidentally did she specify any corresponding job code numbers within the DOT.  [Tr. 58].

The Court finds that the VE was not obligated to state a DOT job code number before the ALJ was permitted to rely on the testimony as substantial evidence that other work existed which the Plaintiff could perform.  First, the Court finds there is no requirement that jobs identified and relied upon by a VE must be listed in the DOT.  See Wilson v. Comm'r of Soc. Sec., No. 10-13828, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011) ("Even with the inconsistencies and the failure to provide the DOT codes, the ALJ was within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT.").  Social Security Ruling 00-4p explains that in making disability determinations,

---

[3] While the ALJ noted in his decision that the VE had identified five jobs, the Plaintiff argues that the VE only identified three jobs because night watchman was a type of unarmed security guard and plumbing hardware assembler was a type of case packager/factory job. [Doc. 17 at 20].  While the Court observes that the Plaintiff's position is one possible interpretation of the VE's testimony, the Court finds that even assuming the VE only identified three jobs, rather than five as interpreted by the ALJ, the "three" jobs enumerated by the VE constitute a sufficient amount of available work that the Plaintiff could perform within the national economy.

the agency relies "primar[ily] on the DOT . . . for information about the requirements of work in the national economy." 2000 WL 1898704 at *3 (2004). However, "[i]nformation about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling." Id. at *2. Moreover, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Id. at *3. Therefore, VE testimony "may be able to provide more specific information about jobs or occupations than the DOT." Id. As a result, a VE is permitted to rely on sources other than the DOT in evaluating a hypothetical question posed by an ALJ. Id. at *2 ("Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations.").

Second, the Court finds that the ALJ complied with Social Security Ruling 00-4p which places an affirmative responsibility on the ALJ to ask the VE whether the VE's testimony conflicts with the DOT. 2000 WL 1898704 at *4. Because the ALJ, in this case, asked the VE whether her testimony conflicted with the DOT and because the VE responded that it did not [Tr. 58], the ALJ had no continuing obligation to ensure whether the VE's testimony was correct before relying on it. See Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."); Frommel v. Comm'r of Soc. Sec., No. 1:14-CV-522, 2015 WL 3970147, at *5 (S.D. Ohio June 10, 2015) adopted by No. 1:14CV522, 2015 WL 3970154 (S.D. Ohio June 30, 2015) ("[O]nly if the VE testifies that there is a conflict must the ALJ seek out 'a reasonable explanation for [the] apparent conflict.'") (quoting Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 603-605 (6th Cir. 2009)).

17

Therefore, the Court finds the Plaintiff's allegation of error is not well-taken.

## VI.    CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment [**Doc. 16**] be **DENIED**, and the Defendant's Motion for Summary Judgment [**Doc. 18**] be **GRANTED**.  The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY,

_____
United States Magistrate Judge

18